**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch**

Civil Action No. 14-cv-00022-RPM

RE/MAX Relocation, Inc.,

   Plaintiff,

v.

VALERO SERVICES, INC.,

   Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

In this civil action, Plaintiff RE/MAX Relocation, Inc. ("RMR") claims that Defendant Valero Services, Inc. breached the parties' Agreement for Relocation Services by failing to indemnify RMR for attorneys' fees and costs RMR incurred in defending a lawsuit in California state court. Valero concedes that the Agreement's indemnification provision applies to RMR's defense of the California litigation. [Doc. 19 at 4.] Valero's only contention is that RMR's claim is barred by the applicable statute of limitations. Both sides have moved for summary judgment on the timeliness issue. [Docs. 15 & 18.]

**A. Undisputed Facts**

On January 28, 1998, RMR and Valero entered into an Agreement for Relocation Services ("the Agreement") pursuant to which Valero paid RMR to provide relocation services to Valero employees who were relocating due to a reassignment within the

1

company. [Doc. 15, Statement of Uncontested Material Facts ("SUMF") ¶ 1.] Those services included helping the relocating Valero employee sell his home.

The Agreement contains an indemnification provision, which states:

> [Valero] shall indemnify and hold harmless RE/MAX and its successors, assigns, officers, directors, employees and agents from any and all claims, liability, losses, damages, costs and expenses (including attorneys' fees) (except to the extent the same are caused by the negligent or intentional acts or omissions of RE/MAX) which RE/MAX may sustain, suffer or be put to as a result of carrying out its obligations under this Agreement, including but not limited to, those arising out of or in any way related to (a) the Contract of Sale or any other agreements or transactions contemplated hereby; (b) the purchase or subsequent sale by RE/MAX of any Home or Special Property; (c) the fraud, deceit or misrepresentation of [the relocating employee] and (d) claims relating to title, encumbrances, zoning, physical or structural condition of any Home or Special Property or encroachments of any kind whatsoever. Notwithstanding the foregoing, in no event shall [Valero] be required to indemnify and hold harmless RE/MAX and its successors, assigns, officers, directors, employees or agents with respect to any claim, liability, loss, damage, cost or expense (including reasonable attorneys' fees) which RE/MAX may sustain, suffer or be put to as a result of the failure of any RE/MAX employee to perform his or her duties, as a result of negligence on the part of any RE/MAX employee, or as a result of the failure on the part of RE/MAX or any RE/MAX employee to exercise that standard of care customary for persons and firms of similar responsibility and employment in the corporate relocation business.

[Doc. 15, Ex. 1 § 6.A.] The indemnification obligation in Section 6 is contingent on:

> (i) [Valero] receiving prompt notice of all claims, liabilities, losses, damages, costs and expenses asserted against [RMR]; (ii) [Valero] controlling the defense using counsel of [Valero's] choice and (iii) [RMR] fully cooperating with [Valero] in such defense.

[Id.]

In 2005, pursuant to the Agreement, Valero engaged RMR to provide relocation services for a Valero employee, Mr. McCardle, and his wife. RMR helped the McCardles sell their condominium in Solano County, California. [SUMF ¶ 6.] The sale occurred in 2005.

On or about September 28, 2009, the purchaser of the McCardles' condo, Thomas Oetjen, filed a lawsuit against the McCardles in Solano County Superior Court ("the

2

California Litigation"). RMR was not named as a defendant. Oetjen filed his first amended complaint on April 12, 2010, which added RMR as a defendant and brought claims for breach of contract, breach of a statutory duty of disclosure, and fraudulent concealment against the McCardles, RMR, and John Jackson, the real estate agent for the McCardles. [SUMF ¶¶ 7-9.] Oetjen alleged that all of the defendants failed to investigate the condition of the property purchased, and failed to disclose to him the defects in the property's condition before the sale occurred. Specifically, Oetjen alleged that:

> [The McCardles] and [RMR] and their agent John P. Jackson breached the Purchase Agreement by failing to disclose material and important information regarding the condition of the real property that was within these defendants [sic] knowledge . . . .
> . . .
> [Jackson] and [RMR] participated in [the McCardles'] breach of the Purchase Contract by failing to prevent sellers' misleading disclosures and failing to disclose information that they knew or should have know [sic].
> . . .
> [The McCardles], [RMR] and [John Jackson] owed plaintiff a duty under California Civil Code sections 1102 et. seq. to inspect and to disclose fully and fairly all facts that materially affect or related to the condition of the real property and to disclose truthful and complete, rather than misleading, information.
> . . .
> [RMR] and [John Jackson] failed to undertake a sufficient inquiry of [the McCardles] as to the condition of the property or to undertake a reasonably competent and diligent investigation of the real property to determine whether the items set forth in the disclosure statements were true.
> . . .
> [The McCardles], [RMR], and [John Jackson] failed to comply with the requirements of California Civil Code sections 1102 et. seq. by failing to supply required material information as to the condition of real property, and by instead supplying information that did not meet the requirements of these provisions, and these actions were not in good faith.
> …
> [RMR] and its agents John Jackson and Paula J. Bogle deliberately concealed the true facts regarding the real property from plaintiff. In statements signed by [John Jackson] or [RMR] alone they deny: Site drainage near home – possible ponding.

[Doc. 15, Ex. 3 ¶¶ 22, 23, 27, 28, 29, 36.]

3

In a letter dated May 21, 2010, RMR "[requested] indemnification" from Valero for the California Litigation "under Paragraph 6 of the Agreement for Relocation Services dated January 28, 1998 . . . ." [Doc. 15, Ex. 4.] RMR stated that it had "retained Bill Kelly of Kelly, Stacy & Rita LLC on this matter" and that it would be "happy to arrange a conference call with Bill Kelly . . . to answer any questions . . . about the lawsuit." [Id.][1]

On July 6, 2010, Oetjen served RMR with the first amended complaint. RMR e-mailed Valero later that day again requesting that Valero indemnify it in the matter. [Doc. 15, Ex. 5.]

On July 7, 2010, Valero asked for additional documents and information related to the sale of the McCardles' property. [Doc. 15, Ex. 6 at 1.] RMR immediately provided the information Valero requested. [Id. at 3.]

In a letter dated November 19, 2010, RMR (through its counsel, Bill Kelly) demanded indemnification from Valero in the California Litigation, and forwarded to Valero invoices for $18,385.77 in fees and costs incurred up to that point. [Doc. 15, Ex. 7.] Valero did not respond or provide the requested payment.

RMR (through Bill Kelly) again demanded indemnification from Valero in a January 10, 2011 letter. RMR stated that it considered "Valero's non-response [to RMR's] repeated indemnification demands to be a waiver of any right to control defense that Valero might have had under the Agreement." [Doc. 15, Ex. 9.] Again, Valero did not respond.

Thereafter, Bill Kelly periodically reported to Michael Sullivan, Valero's Denver-based counsel, regarding the California Litigation, as follows:

---

[1] Though Oetjen had not yet served RMR with his first amended complaint, RMR knew that Oetjen had filed it when RMR wrote its May 21, 2010 letter to Valero.

On February 24, 2011, Kelly updated Sullivan as to the status of mediation scheduling and Oetjen's most recent settlement demand. [Doc. 15, Ex. 10.]

On March 23, 2011, Kelly advised Sullivan of developments regarding a possible mediation with Oetjen. [Doc. 15, Ex. 11.]

On April 7, 2011, Kelly forwarded Sullivan copies of various pleadings related to a motion for summary judgment by a co-defendant. [Doc. 15, Ex. 12.]

On September 23, 2011, Kelly updated Sullivan concerning the outcome of a case management conference. [Doc. 15, Ex. 13.]

On September 30, 2011, Kelly advised Sullivan of a proposed mediation date and specifically asked Sullivan if he intended to participate, based upon the indemnification provision of the Agreement. [Doc. 15, Ex. 14.] Following numerous discussions, Sullivan confirmed he would not directly participate in the mediation. [Doc. 15, Ex. 8 ¶ 12.]

On November 8, 2011, Kelly sent a draft of RMR's confidential mediation statement to Sullivan for input and consideration before RMR finalized the document to send to the mediator. [Doc. 15, Ex. 15.]

On November 16, 2011, Kelly forwarded information to Sullivan regarding RMR's attorneys' fees to date and related mediation information. [Doc. 15, Ex. 16.]

On November 22, 2011, Kelly e-mailed Sullivan a report on the mediation that was held the week before. Kelly informed Sullivan that the parties were considering settlement terms and asked that Valero grant RMR authority to make Oetjen an offer. Kelly again demanded that Valero indemnify RMR. [Doc. 15, Ex. 17.] Sullivan did not respond.

On November 29, 2011, Kelly e-mailed Sullivan asking him for a response regarding the Oetjen settlement. [Doc. 15, Ex. 18.] On November 30, 2011, Kelly faxed his emails of November 22 and November 29 to Sullivan. [Doc. 15, Ex. 19.]

On December 5, 2011, Sullivan confirmed that he had received Kelly's e-mails, and said that he had forwarded the information to Valero but had not yet received a response. Sullivan stated: "If you feel there is a danger that the deal will go away then [RMR] is, of course, free to settle and deal with us later." [Doc. 15, Ex. 20.]

RMR filed its motion for summary judgment in the California Litigation on September 19, 2012. Kelly sent a copy of the motion to Sullivan. In its motion, RMR argued that the undisputed facts established that (1) RMR complied with all of the statutory requirements concerning disclosures to buyers; (2) Oetjen could not establish that RMR fraudulently concealed anything from him; (3) Oetjen could not establish a contract existed between him and RMR; (4) Oetjen released RMR from all liability; and (5) all of Oetjen's claims were barred by the statute of limitations. [SUMF ¶¶ 18-19.]

On December 7, 2012, Judge Mattice of the Solano County Superior Court entered his tentative ruling granting summary judgment in favor of RMR and against Oetjen. Kelly forwarded the tentative ruling to Sullivan, and stated that "I will of course be in touch with you about the indemnity issues for Valero in the immediate future." [Doc. 15, Ex. 22.] In the Tentative Ruling, Judge Mattice specifically found that:

> RMR has submitted undisputed evidence that it provided all of the required disclosures regarding the condition of the property to plaintiff and his agent prior to the close of escrow, and did not have personal knowledge of any facts other than those disclosed. RMR has also submitted undisputed evidence that plaintiff signed a release relieving RMR from all liability with respect to the condition of the property. The only evidence plaintiff submitted in opposition to the motion is plaintiff's own declaration. However, this declaration does not contain any admissible evidence that disputes the evidence

submitted by RMR indicating that it fulfilled all of its duties under the contract and the statutes, and was released from liability by plaintiff.

[Id.] On January 8, 2013, Judge Mattice entered an order making the tentative ruling the order of the Court and granting summary judgment in favor of RMR and against Oetjen.

On February 19, 2013, Kelly sent a draft motion for attorney's fees and costs to Sullivan for review and comment before filing it in the California Litigation. Kelly specifically stated that RMR was "taking this step in large part to preserve the interests of Valero, who owes indemnity to [RMR] for the costs of defending this suit." [Doc. 15, Ex. 24.]

On June 6, 2013, Kelly provided Sullivan with the briefing on RMR's motion for attorney's fees and costs, and indicated that a hearing had been held and further briefing ordered. [Doc. 15, Ex. 25.]

On December 10, 2013, Kelly sent a "final demand" for reimbursement and indemnification on RMR's behalf to Valero (through Michael Sullivan), along with a draft of the complaint ultimately filed in this matter. [Doc. 15, Ex. 26.] Valero did not respond. RMR filed this action on January 3, 2014. [Doc. 1.]

## B. Discussion

The parties agree that RMR's breach of contract claim is subject to the three-year statute of limitations for most contract actions set forth in Colo. Rev. Stat. § 13-80-101(1)(a). [Doc. 15 at 17; Doc. 19 at 5.] The parties dispute when RMR's breach of contract claim accrued.

Valero contends that the parties' Agreement imposed two duties: (1) a duty to defend, and (2) a duty to indemnify. According to Valero, RMR's claim for breach based on Valero's duty to defend "arose no later than November 2010[,]" when Valero refused to assume RMR's defense after RMR stated that it had begun incurring defense costs. [Doc. 19

at 4-5.] Using November 2010 as the accrual date, Valero argues that the three-year statute of limitations expired in November 2013, roughly two months before RMR initiated this action. RMR is suing Valero for breaching its duty to indemnify RMR, a duty distinct from any possible duty to defend that may have arisen.

Valero also argues that its "duty to indemnify was not implicated here since RMR was ultimately dismissed from the *Oetjen* matter." [Doc. 19 at 4.] In Valero's apparent view, indemnity only pertains to "[paying] the judgment against the insured." [Id. at 12.] By its terms, the parties' Agreement requires Valero to indemnify RMR not only for "any and all claims" or "liability," but also for "costs and expenses (including attorneys' fees) . . . ." [Doc. 15, Ex. 1 § 6.A.] While an indemnity provision could limit an insurer's indemnification obligation to a damages award against the insured, this Agreement expressly includes attorneys' fees as part of Valero's obligation.

"The duty to indemnify arises only when the policy actually covers the harm and typically cannot be determined until the resolution of the underlying claims." Cyprus Amax Mins. Co. v. Lexington Ins. Co., 74 P.3d 294, 301 (Colo. 2003) (citing Hecla Mining Co. v. N.H. Ins. Co., 811 P.2d 1083, 1089-90 (Colo. 1991)). Here, the parties' Agreement expressly disclaimed Valero's duty to indemnify RMR:

> with respect to any claim, liability, loss, damage, cost or expense (including reasonable attorneys' fees) which [RMR] may sustain, suffer or be put to as a result of the failure of any [RMR] employee to perform his or her duties, as a result of negligence on the part of any [RMR] employee, or as a result of the failure on the part of [RMR] or any [RMR] employee to exercise that standard of care customary for persons and firms of similar responsibility and employment in the corporate relocation business.

[Doc. 15, Ex. 1 § 6.A.] In the California Litigation, Oetjen alleged that RMR failed to disclose material and important information about the McCardles' property which it knew

8

about; failed to prevent the McCardles' misleading disclosures; failed to undertake sufficient inquiry of the property; and breached duties under California statutes. [Doc. 15, Ex. 3 ¶¶ 22, 23, 27, 28, 29, 36.] Clearly those allegations raised the question of whether the Agreement's indemnity disclaimer applied to RMR's conduct. Michael Sullivan's silence in response to RMR's repeated demands for indemnification indicates that Valero wanted to wait for an answer to that question before committing to pay for RMR's attorneys' fees and costs. It was not until January 8, 2013, when Judge Mattice entered an order dismissing Oetjen's claims against RMR, that RMR was absolved of Oetjen's allegations of misconduct. At that point, it became clear that the Agreement's indemnity disclaimer did not apply and that Valero had a duty to indemnify RMR for its attorneys' fees and costs in the California Litigation.

RMR's claim for indemnity accrued on January 8, 2013. This is an action to recover damages for Valero's breach of the Agreement. A breach of contract claim accrues "on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(6). Valero breached the Agreement when it refused RMR's final indemnity demand set forth in Bill Kelly's December 10, 2013 letter. RMR initiated this action on January 3, 2014. [Doc. 1.] RMR's breach of contract claim is timely.

Section 10.G. of the parties' Agreement provides:

> In the event of any litigation between the parties to this Agreement, the prevailing party shall be entitled to immediate payment of all costs and expenses incurred by such party in such dispute, including, but not limited to, court or arbitration costs and reasonable attorneys' fees.

[Doc. 15, Ex. 1 § 10.G.] RMR is the "prevailing party" in this action; therefore, it is entitled under Section 10.G. to the reasonable attorneys' fees and costs it incurred in bringing this action.

There is some dispute between the parties as to the attorneys' fees and costs RMR incurred in defending the California Litigation, and there is a discrepancy in the amount RMR requested in the Scheduling Order [Doc. 12 at 4] and the amount it requests here [Doc. 15 at 23]. In addition, RMR has not submitted evidence of the attorneys' fees and costs it incurred in bringing this action.

## C. Conclusion

Upon the foregoing, it is

ORDERED that Plaintiff RMR's Motion for Summary Judgment [Doc. 15] is granted as to Defendant Valero's liability for breach of the Agreement; and it is

FURTHER ORDERED that Defendant Valero's Motion for Summary Judgment [Doc. 18] is denied; and it is

FURTHER ORDERED that on or before September 15, 2014 RMR will move for an award of the attorneys' fees and costs it incurred in defending the California Litigation and in bringing this action against Valero. RMR's motion for attorneys' fees must comply with Local Civil Rule 54.3. Valero will have up to and including October 6, 2014 to respond.

Dated: August 26, 2014.

BY THE COURT:

**s/Richard P. Matsch**

_____
Richard P. Matsch
Senior District Judge